IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Municipal Association of South Carolina,<br><br>Plaintiff,<br>v.<br><br>Government Employees Insurance Company, GEICO Casualty Company, GEICO Choice Insurance Company, General Insurance Company, GEICO Insurance Company, and GEICO Secure Insurance Company,<br><br>Defendants. | C/A No. 3:25-cv-3780-JFA<br><br>MEMORANDUM OPINION AND ORDER |

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17). Defendants allege Plaintiff is exceeding the authority permitted by statute. Plaintiff Municipal Association of South Carolina ("Plaintiff" or "MASC") filed a response in opposition (ECF No. 26), to which Defendants filed a reply (ECF No. 28). Therefore, this matter is ripe for review. For the reasons discussed herein, Defendants' Motion to Dismiss is denied.

## I.     RELEVANT BACKGROUND

This case involves a South Carolina municipality's authority to contract with a third party to impose a business license tax on insurance companies. Plaintiff is a non-profit organization made up of virtually all South Carolina municipalities. (ECF No. 1 ¶ 1). According to Plaintiff, one of its functions is to administer the Insurance Tax Program ("ITP") and collect a 2% tax on gross premiums collected by insurance companies on behalf of Plaintiff's municipal members ("Participating Municipalities"). *Id.* ¶¶ 14-16.

MASC's authority is set forth by city ordinances incorporating contractual agreements between MASC and Participating Municipalities. Plaintiff attached the City of Charleston's ordinance to the Complaint as an example of the typical ordinance. (ECF No. 1-2). Charleston's ordinance directs the city to apply to participate in MASC's Local Revenue Services ("LRS")[1] and, if approved, enter into an agreement substantially conforming to a sample agreement attached to the ordinance (the "LRS Agreement"). *Id.* at 3, § 1). The LRS agreement provides that "LRS may, and at the direction of and subject to the control of the LRS Board of Directors shall, establish or continue one or more Revenue Service Programs including, without limitation, for the administration, assessment, collection, and enforcement of Statewide Business License Taxes and other Impositions related to Statewide Business License Taxes." (ECF No. 1-3 at 4, § 5). The agreement defines "Imposition" as "any tax, fee, rate, charge, fine, penalty, or interest charge that has been lawfully imposed by a Participant and for which a Revenue Service Program has been established." *Id.* at 3, §1(d).

As part of its administration of ITP, Plaintiff contends it "requires documentation of amounts due from the insurance company, including Reconciliation Reports, in which the company provides information to verify whether revenues of the company are appropriate for exclusion as non-municipal revenues and for [MASC] to determine the proper allocation of taxes, fees, fines, or penalties." (ECF No. 26 at 2). Plaintiff alleges that Defendants have reported and paid on time but failed to send the required Reconciliation

---

[1] Local Revenue Services is a division of MASC.

Reports for the past seven years despite multiple requests. (ECF No. 1, ¶¶ 26-27). Despite stating Defendants report and pay on time, Plaintiff insists Defendants have failed to pay the full amount of business license taxes on these policies for license years 2021-2024. *Id.* ¶ 30. Plaintiff seeks unpaid taxes and penalties from Defendants. *Id.* ¶¶ 33-34. The Complaint sets forth two specific causes of action: (1) collection of unpaid taxes, and (2) collection of unpaid penalties. *Id.*

## II.     LEGAL STANDARD

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Atlantic Corp. v. Twombly*, 550 U.S. 544, 580 (2007).

In reviewing the adequacy of a complaint, a court "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Ultimately, "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can

prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs.*, 7 F.3d at 1134.

### III.     ANALYSIS

Defendants' Motion to Dismiss argues Plaintiff's claims: (A) are based on a delegation of powers that exceed cited statutory authority; (B) are not cognizable claims under South Carolina law; and (C) are barred by the applicable statute of limitations. (ECF No. 17). Additionally, at the hearing for Defendants' Motion to Dismiss held before this Court on August 27, 2025, Defendants alleged the case should be dismissed because Plaintiff failed to exhaust its required administrative remedies. After carefully reviewing the respective briefing and arguments made at the hearing, this Court requested additional briefing on two issues. First, whether Plaintiff was required to and failed to exhaust its administrative remedies pursuant to S.C. Code Ann. § 6-1-410; and second, whether the circumstances in this case warrant abstention under *Burford v. Sun Oil Co.* 319 U.S. 315 (1943). *Id.* Supplemental briefs from both parties have been received and carefully reviewed. (ECF Nos. 43 & 47).

### A.     MASC's Authority

Defendants do not challenge the broad powers of municipalities in this State, including the power to contract out certain functions to third parties. (ECF No. 28, ¶ 2). "Rather, Defendants dispute the *scope* of the powers which can be contracted out under Plaintiff's cited statutory authority." *Id.* (emphasis added in original). Defendants contend MASC does not have the statutory authority to collect delinquent taxes or penalties, to

4

demand reconciliation reports, or to engage in litigation to collect delinquent payments. However, the authority delineated by the relevant statutes relates to the powers of municipalities, not MASC. Instead, MASC's purported authority is granted through municipal ordinances and contractual agreements. Because the ordinances, in conjunction with the terms of the agreements, specifically convey these powers, Defendants are in substance challenging the validity of these ordinances.

 1. MASC's Authority to Collect Delinquent Taxes and Penalties

Defendants contend MASC does not have the authority to collect unpaid taxes and unpaid penalties. At this stage, the Court is limited to the allegations set forth in the Complaint and the attachments thereto. Defendants' contentions require this Court to review the ordinances and contractual agreements to determine the scope of authority granted therein. As part of the Complaint, Plaintiff has presented the Court an ordinance of one of the Participating Municipalities, (ECF No. 1-2), and an unsigned sample LRS Agreement. (ECF No. 1-3). Accordingly, the Court will review these documents. The sample ordinance specifically directs the municipality to join LRS and participate in certain local revenue services in accordance with the terms of a form agreement. (ECF No. 1-2 at 3, §1). The ordinance sets the rates for insurance companies, the deadline for payment, and the penalty for delinquent payments at 5% of the tax due per month. *Id.* at 4, §§ 3(f), (g).

"When interpreting an ordinance, the legislative intent must prevail if it can be reasonably discovered in the language used*." Mikell v. Cnty. of Charleston*, 386 S.C. 153, 160, 687 S.E.2d 326, 330 (2009) (citation omitted). The language used in the sample

ordinance conveys the municipality's intent to delegate administration of the ITP to MASC, including the collection of delinquent payments and penalties. The sample LRS agreement, (ECF No. 1-3), further underscores this intent. The Agreement states that LRS's functions include collecting current and delinquent impositions. *Id.* at 4, § 5. The definition of "imposition" includes fines, penalties, and interest charges that have been "lawfully imposed by a Participant and for which a Revenue Service Program has been established." *Id.* at 3, § 1(d). Thus, Participating Municipalities have delegated, through ordinance and agreement, their authority to collect delinquent taxes and penalties. Defendants effectively challenge the authority of Participating Municipalities to make this delegation.

Determining the validity of a local ordinance is a two-step process. *Sunset Cay, LLC v. City of Folly Beach*, 357 S.C. 414, 425, 593 S.E.2d 462, 467 (2004). In determining whether an ordinance is valid, a court asks (1) whether the local government had the power to enact the ordinance, and if so (2) whether the ordinance is consistent with the constitution and general law of South Carolina. *Beachfront Entm't, Inc. v. Town of Sullivan's Island*, 379 S.C. 602, 605, 666 S.E.2d 912, 913 (2008) (citing *Diamonds v. Greenville Cnty.*, 325 S.C. 154, 480 S.E.2d 718 (1997)). "A municipal ordinance is a legislative enactment and is presumed to be constitutional." *Sunset Cay, LLC*, 357 S.C. at 425, 593 S.E.2d at 467 (quoting *Whaley v. Dorchester County Zoning Bd. of Appeals*, 337 S.C. 568, 575, 524 S.E.2d 404, 408 (1999)). The burden of proving the invalidity of an ordinance is on the party attacking it. *Id.*

The "Home Rule" amendments to the South Carolina Constitution[2] grant broad powers to South Carolina municipalities. Specifically, Article VIII, § 17 states that "[t]he provisions of this Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution." Subsequent to these amendments, the South Carolina legislature enacted S.C. Code Ann. § 5–7–30, which provides that municipalities may enact regulations, resolutions, and ordinances, including the authority to "levy a business license on gross income."

Municipalities are also statutorily empowered to perform their functions by contract with "any individual, corporation, state or political subdivision or agency[,]" S.C. Code Ann. § 5-7-60, and, more specifically, they are empowered to contract by ordinance to assist in collecting property or business license taxes. S.C. Code Ann. § 5-7-300(E). The only limitation on this broad grant of power to municipalities "is that the regulation, resolution, or ordinance may not be inconsistent with the Constitution and general law of this State." *Hosp. Ass'n of S.C. v. Cnty. of Charleston*, 320 S.C. 219, 227, 464 S.E.2d 113, 118 (1995). Reading these constitutional and statutory provisions together, municipalities clearly have the authority to enact ordinances authorizing MASC to act as their

---

[2] Article VIII of the South Carolina Constitution was completely revised in 1973 to accomplish "home rule," granting renewed autonomy to local government. *S. Bell Tel. & Tel. Co. v. City of Aiken*, 279 S.C. 269, 271, 306 S.E.2d 220, 221 (1983).

administrator for the purpose of administrating and collecting business license taxes from insurance companies.

Having determined that municipalities have the authority to enact the relevant ordinances, the Court must determine whether the ordinances at issue are inconsistent with the statutes set forth by Defendants. A conflict exists between a state statute and a municipal ordinance when both "contain either express or implied conditions which are inconsistent or irreconcilable with each other." *Town of Hilton Head v. Fine Liquors*, 302 S.C. 550, 553, 397 S.E.2d 662, 664 (1990).

Defendants insist MASC is without authority to collect delinquent taxes and penalties under South Carolina Code § 5-7-300. Defendants point to a distinction in the language between § 5-7-300(A) and § 5-7-300(E). S.C. Code Ann. § 5-7-300(A) authorizes municipalities to "provide by ordinance a procedure for the collection of delinquent real and personal property taxes, except taxes on motor vehicles." In comparison, § 5-7-300(E) authorizes municipalities to "contract by ordinance with an individual, firm, or organization to assist the municipality in collecting property or business license taxes." Defendants point to the lack of express authority conveyed by Subsection (E) to collect "delinquent" taxes or "penalties" which is expressly permitted by Subsection (A). (ECF No. 17, P. 6). Defendants further indicate that while Subsections (A) and (B) allow for municipalities to levy liens or collect penalties for delinquent taxes, Subsection (D) only allows the counties with whom the municipalities may contract to engage in delinquent tax sales, but not penalties. By contrast, § 5-7-300(E) only allows municipalities to contract

with an organization for the collection of business license taxes and does not include a provision "for the collection of delinquent business license taxes."

Defendants' contention that Subsection (E) limits the contracting authority to collecting taxes is not compelling. The mere mention of the authority to contract for collection of taxes does not mean the General Assembly intended to limit the definition of such services to exclude delinquent taxes and penalties. Although the General Assembly may pass general laws "specifically limiting the authority of local government [,]" *Town of Hilton Head Island v. Morris*, 324 S.C. 30, 34, 484 S.E.2d 104, 106 (1997), this is not such a law. In fact, the South Carolina Supreme Court has opined that the broad grant of power stated at the beginning of § 5-7-30 is not limited by the specifics mentioned in the remainder of the statute. *Hosp. Ass'n of S.C.*, 320 S.C. at 227, 464 S.E.2d at 118. To hold otherwise, the Court explained, would directly contradict § 5–7–10, which states that "the specific mention of particular powers shall not be construed as limiting in any manner the general powers" of municipalities. *Id.* Moreover, a limited reading of § 5–7–300(E) would be inconsistent with the liberal rule of construction mandated by Article VIII, § 17. *Id.*

"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Mikell*, 386 S.C. at 160, 687 S.E.2d at 330. The words used in a statute "must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand its operation." *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992) (citation omitted). The language must also be read in a way that "harmonizes with its subject matter and accords with its general purpose." *Id.*

The general purpose of § 5-7-300 is to empower municipalities to provide the procedure for collecting taxes and contract with other entities in fulfilling this function. Article VIII of the South Carolina Constitution was ratified to empower local governments to handle local issues, and the legislature enacted S.C. Code Ann. § 5–7–10, *et seq.*, to further this goal. Pursuant to these enactments, the powers of a municipality are to be liberally construed and include those fairly implied and not prohibited by the Constitution. S.C. Const. art. VIII, § 17; S.C. Code Ann. § 5–7–10. The power of the Participating Municipalities to impose ordinances and contract with MASC to assist with the collection of taxes, including delinquent taxes and penalties, is fairly implied and not prohibited by this statute. A liberal construction of any such ordinances, as mandated by Article VIII, §17, further supports the authority of the Participating Municipalities to enact such ordinances. Consequently, the Court finds no conflict between the sample ordinance and the statute set forth by Defendants. Accordingly, because the Participating Municipalities had the power to enact the ordinances at issue, and the ordinances are not inconsistent with the Constitution or general law of this State, the ordinances are valid.

2. <u>MASC's Authority to Require Reconciliation Reports</u>

Defendants also contend MASC does not have the authority to require Defendants to submit Reconciliation Reports. (ECF No. 17 at 9). As stated above, however, the Complaint sets forth two causes of action: (1) collection of unpaid taxes, and (2) collection of unpaid penalties. The Complaint does not set forth a cause of action demanding Reconciliation Reports. Accordingly, this is not an issue for the court to address on Defendants' Motion to Dismiss.

3. <u>MASC's Authority to Litigate</u>

Defendants also challenge MASC's authority to collect the relief sought through a civil lawsuit because no statute permits it to file a lawsuit to collect delinquent taxes or penalties on behalf of the Participating Municipalities. (ECF No. 17 at 7). However, the LRS Agreement grants LRS the power to "sue and be sued in its own name and plead and be impleaded." (ECF No. 1-3 at 5, § 6(d)). The Participating Municipalities have the authority to enact ordinances and enter into agreements with MASC to administer the ITP. The Participating Municipalities appear to have delegated such authority here, including the authority to sue in the process of collecting such taxes. Therefore, the court denies dismissal on this ground.

**B.     Right to Relief**

Defendants opine Plaintiff's claims fail because Plaintiff admits that Defendants paid their taxes on time. (ECF No. 17 at 8). Thus, Defendants argue Plaintiff is merely speculating that because Defendants allegedly did not submit Reconciliation Reports they underpaid their taxes. Plaintiff maintains that even if the court found that MASC does not have independent authority to demand Reconciliation Reports, MASC has the authority to bring this action to require Defendants to pay the full amount of business license taxes on their policies. (ECF No. 26 at 11). At the motion to dismiss stage, this Court must accept well-pleaded allegations as true, including the assertion that Defendants have not paid the full amount owed. Consequently, the court denies dismissal on this basis.

C.  **Statute of Limitations**

Defendants also argue that Plaintiff's claims for the collection of allegedly delinquent taxes and penalties for 2021 are barred by the statute of limitations. (ECF No. 17 at 4). Plaintiff's claims are subject to a three-year statute of limitations. S.C. Code Ann. §§ 15-3-530 & -535. Pursuant to South Carolina's discovery rule, the three-year limitations period begins to run when the "injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 327 S.C. 116, 119, 489 S.E.2d 615, 616 (1997). Stated differently, the three-year limitations period begins to run "where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Columbia Venture, LLC v. Dewberry & Davis, LLC,* 604 F.3d 824, 829 (4th Cir. 2010) (quoting *Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169, 170 (1994)).

Generally, a motion to dismiss for failure to state a claim under Rule 12(b)(6) cannot reach the merits of an affirmative defense, including a statute of limitations defense. "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear on the face of the complaint." *Id.*

With respect to the timing of the claims, the Complaint states that in December or January of each license year MASC sent each of the Defendants a letter regarding taxes

owed by each Defendant company. (ECF No. 1 ¶ 23). Pursuant to the municipal ordinances, the business license tax is due on May 31 for the license year. Thus, Plaintiff's earliest claims for failure to pay and submit the Reports would have become ripe in June 2021. Plaintiff responds, however, that Defendants' actions should toll the statute of limitations because Defendants repeatedly reassured Plaintiff they would submit the required documents. (ECF No. 26 at 13; *see also* ECF No. 1 ¶ 26) ("The Defendants usually agree, verbally or by email, to send the Reconciliation Reports; however, the Defendants have failed to submit the Reconciliation Reports for seven years despite multiple requests.").

"A defendant may be estopped from claiming the statute of limitations as a defense if some conduct or representation by the defendant has induced the plaintiff to delay in filing suit." *Hedgepath v. American Tel. & Tel. Co.*, 348 S.C. 340, 360, 559 S.E.2d 327, 338 (Ct. App. 2001). However, Plaintiff is not required to plead facts that are responsive to an affirmative defense that has not yet been raised. *See Goodman*, 494 F.3d at 466. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." *Goodman*, 494 F.3d at 466.

After discovery, the court may learn that the circumstances presented are insufficient to satisfy the strictures of equitable tolling; however, dismissal at this stage would be premature. Accordingly, the court will deny the Motion to Dismiss Plaintiff's claims as time barred.

13

### D. Failure to Exhaust Administrative Remedies

At the hearing for Defendants' Motion to Dismiss, Defendants alleged the case should be dismissed because Plaintiff was required to and failed to exhaust its administrative remedies. Plaintiff argues the Court should not consider this argument because it was raised for the first time at the hearing. (ECF No. 47, f.n. 5). In support of this contention, Plaintiff cites to case law where courts have disfavored considering arguments raised for the first time at a hearing due to the risk of undermining the purpose of orderly briefing and subjecting an opponent to an unfair disadvantage. *See e.g. N. Carolina All. for Transp. Reform, Inc. v. U.S. Dep't of Transp.,* 713 F. Supp. 2d 491, 510 (M.D.N.C. 2010). However, to ensure this Court considered all arguments and arrived at the correct conclusion, supplemental briefing was ordered on this argument. (ECF No. 40). Accordingly, Plaintiff faces no prejudice by Defendants' argument being raised in the hearing rather than the initial Motion to Dismiss and as such the Court considers this administrative remedy argument.

S.C. Code Ann. § 6-1-410, as part of the South Carolina Business License Tax Standardization Act, provides a process by which a municipality *may* serve a notice of assessment on a taxpayer if a taxpayer refuses to or fails to pay a business license tax. S.C. Code Ann. § 6-1-410(A) (emphasis added). Subsection (B) outlines the process by which an appeal of the notice of assessment may be made, and Subsection (C) allows a taxpayer to appeal the decision to the Administrative Law Court. Both the sample ordinance and the sample LRS agreement attached to the Complaint refer to the administrative remedies provided by § 6-1-410. (ECF No. 1-2, pgs. 5-6, § 8) (". . . the following appeals process

required by S.C. Code Section 6-1-410 *shall* apply") (emphasis added); (ECF No. 1-3, p. 7, § 8) ("With respect to the calculation, assessment, and collection of Impositions, the following appeals process, as required by Section 6-1-410, *shall* apply.") (emphasis added).

This Court acknowledges that the text of § 6-1-410(A), "the taxing jurisdiction business license official *may* serve notice of assessment [,]" uses permissive language. However, South Carolina Courts have "required exhaustion when there is an adequate administrative remedy even though the statute did not expressly require it." *Cox v. S.C. Educ. Lottery Comm'n*, 441 S.C. 209, 216, 893 S.E.2d 342, 346 (Ct. App. 2023); *see also Hyde v. S.C. Dep't of Mental Health,* 314 S.C. 207, 208, 442 S.E.2d 582, 583 (1994) ("We find the trial judge abused his discretion in finding as a matter of law that [plaintiff] did not have to exhaust administrative remedies simply because the [statute] does not expressly require it.") Further, as evidenced by the sample ordinance and sample LRS agreement attached to the Complaint, it appears Plaintiff and the Participating Municipalities interpret the remedies provided for under § 6-1-410 to be mandatory. Accordingly, the Court determines Plaintiff was required to exhaust its administrative remedies prior to filing this action.

However, dismissal at this stage for failure to exhaust administrative remedies would be premature. At the motion to dismiss stage, this Court must accept well-pleaded allegations as true and view the Complaint in a light most favorable to Plaintiff. Plaintiff alleges in its Complaint that it has engaged in correspondence with Defendant regarding the taxes owed each year. *See* (ECF No. 1, ¶¶ 23-25, 32). S.C. Code Ann. § 6-1-410(A) requires that the taxing jurisdiction business license official serve notice of assessment on

the taxpayer by mail or personal service. Once this step is completed, the taxpayer may then avail itself of the right to ask for an adjustment of the assessment which may trigger further remedies. S.C. Code Ann. § 6-1-410(A)-(D). At this time, it is not evident the correspondence Plaintiff alleges occurred fail to satisfy the requirements of § 6-1-410.

After discovery, the Court may learn that the correspondence alleged in the Complaint was insufficient to satisfy Plaintiff's requirements under S.C. Code §6-1-410. However, dismissal at this stage would be premature. Accordingly, the Court denies the Motion to Dismiss Plaintiff's claims for failure to exhaust administrative remedies.

### E. Applicability of *Burford* Abstention

In its request for supplemental briefing, this Court also requested briefing on whether the circumstances in this case warrant abstention under *Burford v. Sun Oil Co*. 319 U.S. 315 (1943). "The *Burford* doctrine 'justif[ies] the dismissal of a federal action' in a 'narrow range of circumstances.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 726, (1996)). "*Burford* permits abstention when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: (1) 'there are difficult questions of state law … whose importance transcends the result in the case then at bar'; or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Martin,* 499 F.3d at 364 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361 (1989)).

This Court, after reviewing the supplemental briefing, (ECF Nos. 43 & 48), and case law interpreting *Burford* abstention, is satisfied that the circumstance in this case do not

warrant abstention. This case does not present the type of extraordinary circumstances that would warrant abstention under *Burford.* As discussed, the authority of municipalities to impose a business license tax and penalties is not being called into question. Rather, it is the scope of authority the municipalities are permitted to delegate pursuant to ordinances and contracts that are at issue. Accordingly, this ancillary interpretation of the delegation rights of a municipality does not warrant abstention under *Burford.*

Similarly, while briefly discussed at the hearing and raised in the supplemental briefing, (ECF No. 47), this Court declines to certify a question to the South Carolina Supreme Court on this matter. A federal court may certify a question which concerns "novel issues of state law peculiarly calling for the exercise of judgment by state courts." *McKesson v. Doe*, 592 U.S. 1, 5, (2020). Such a novel issue is not present here. As discussed at length, the Participating Municipalities had the authority to enact the relevant ordinances. Further, these ordinances are not inconsistent with the statutes set forth by Defendant. While the interpretation of whether S.C. Code Ann. 5-7-300(E) permits MASC to collect delinquent taxes is one of first impression, it is not one that peculiarly calls for the exercise of judgment by state courts. Rather, interpreting the statute to afford a broad grant of power consistent with prior State Court rulings, *See e.g. Hosp. Ass'n of S.C.*, 320 S.C. at 227, 464 S.E.2d at 118, is well within this Court's capabilities.

## IV. CONCLUSION

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss. (ECF No. 17).

IT IS SO ORDERED.

November 12, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge